IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| TRANE US INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:17-cv-00042-MTT |
| | ) |
| YEAROUT SERVICE, LLC, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## ORDER

Plaintiff Trane moves for summary judgment on Defendant GSC's counterclaim. Doc. 80. For the following reasons, that motion (Doc. 80) is **GRANTED**.

## I. BACKGROUND

This case arises from a consolidation of two cases, both involving a renovation project of Hangar Dock Building 54 at Robins Air Force Base in Warner Robins, GA ("the Project"). Docs. 20; 29. The United States Army Corps of Engineers was the owner of the Project, GSC was the general contractor, Defendant Yearout was subcontracted by GSC to perform certain work under the contract, and Trane provided materials to Yearout, including makeup air units ("MAUs" or "AHUs")[1] to be installed as part of the Project. *See generally* Doc. 1; *see* Doc. 97-1 ¶ 3. Trane alleges Yearout failed to pay for a humidifier it sold to Yearout, so Trane brought suit against Yearout.

---

[1] The Court construes the term "MAUs" in GSC's counterclaim to refer to the same equipment as "AHUs" in Trane's motion. *See* Doc. 18 at 13. Trane refers to them as "AHUs" in its motion, Doc. 80 at 2, and GSC refers to them as "AHU/MAUs" in its response. Doc. 97 at 3. The Court will refer to them as "MAUs."

Docs. 1 at 5-6; 1-2 at 1. Trane also brought suit against GSC under the Miller Act, 40 U.S.C. §§ 3131 *et seq.*, alleging GSC had executed a payment bond for the protection of those working on the Project and that Trane was entitled to recover on the bond for money owed. Doc. 1 at 4-8; *see* 40 U.S.C. § 3133(b). It also asserted a claim against Allied World (formerly known as Darwin), the surety for the payment bond. Docs. 1 at 4; 15 at 1.

GSC brought a counterclaim against Trane, alleging the MAUs Trane provided were defective. Doc. 18 at 13. Trane acknowledges that some of the fan motors in the MAUs have failed in the time since the MAUs started running. Doc. 80 at 2. However, Trane claims it is entitled to summary judgment because Trane was not in privity of contract with GSC. *Id.* at 3.

## II. DISCUSSION

### A. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of

the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A). "When the *nonmoving* party has the burden of proof at trial, the moving party is not required to 'support its motion with affidavits or other similar material *negating* the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437-38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may 'show[ ]—that is, point[ ] out to the district court—that there is an absence of evidence to support the nonmoving party's case.'" *Id.* (alterations in original) (quoting *Celotex*, 477 U.S. at 324). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the non-moving party, who must rebut the movant's showing "by producing … relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex*, 477 U.S. at 324). The non-moving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249-50). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. … The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

**B. Analysis**

In its counterclaim, GSC claims the equipment furnished by Trane was "warranted to meet certain standards for workmanship and durability" and that the MAUs supplied by Trane were defective.[2] Doc. 18 at 13. As a result, GSC incurred expenses. *Id.* Surprisingly, GSC does not identify what its legal claim is. *Id.* Trane interprets the claim as one for breach of the implied warranty of merchantability, O.C.G.A. § 11-2-314.[3] Doc. 80 at 4. GSC does not contest that characterization. *See generally* Doc. 97. Because it is the only claim even arguably viable which GSC's complaint could be construed to assert, the Court treats this claim as one for breach of the implied warranty.[4]

Trane argues that under Georgia law, a warranty generally can be enforced only by one in privity with the seller. Doc. 80 at 5. The general rule in Georgia, Trane argues, is that

> if a defendant is not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on the implied or express warranty, if any, arising out of the prior sale by the defendant to the original purchaser, such as distributor or retailer from whom plaintiff purchased the product.

*Evershine Prod., Inc. v. Schmitt*, 130 Ga. App. 34, 35, 202 S.E.2d 228, 231 (1973). That is, a plaintiff cannot recover for breach of warranty unless it is in privity with the defendant. *Id.* Under the UCC, as adopted in Georgia, a warranty is made by the seller

---

[2] Although the MAUs were custom, GSC does not argue that Trane breached a warranty of fitness for a particular purpose. Doc. 18 at 13-15.

[3] The Court applies Georgia law to this claim for breach of warranty. *See Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

[4] In its response, GSC appears to argue its claim primarily as a generic breach-of-contract claim. However, as discussed below, it did not have a contract with Trane, and it fails to allege there were any contractual provisions, apart from the UCC's implied warranty, that Trane actually breached. Doc. 97.

of a good to the buyer, and it only extends beyond the buyer in certain situations specified at O.C.G.A. § 11-2-318. *Decatur N. Assocs., Ltd. v. Builders Glass, Inc.*, 180 Ga. App. 862, 863, 350 S.E.2d 795, 797 (1986). Here, it is undisputed the buyer was Yearout, not GSC. Doc. 97 at 5 ("Ultimately, the purchase order for the AHU/MAUs was submitted by Yearout").

In response, GSC agrees that someone who is not a party to a contract usually cannot sue to enforce it. Doc. 97 at 7. However, GSC argues that it is entitled to recover against Trane because (1) GSC and Trane were, in fact, in privity of contract; and (2) GSC is an intended third-party beneficiary of the contract between Trane and Yearout, which allows it to bring suit to enforce the contract under O.C.G.A. § 9-2-20(b). *Id.* at 5-10.

To show privity, GSC argues that although Trane was "not a signatory" to the agreement between GSC and Yearout, Trane "was clearly aware the design and construction work it was performing was for the benefit of GSC complying with" its agreement with the Army Corps of Engineers. *Id.* at 5. That argument may be true, but it does not establish privity. "'Privity of contract' is narrowly defined as '[t]hat connection or relationship which exists between two or more contracting parties.'" *Decatur N. Assocs., Ltd.* 180 Ga. App. at 863, 350 S.E.2d at 796 (quoting Black's Law Dictionary, 5th Ed. (1979)). GSC further argues that its agreement with Yearout "made entities hired by Yearout subject to the terms of the GSC/Yearout contract." Doc. 97 at 6. The relevant language of the GSC/Yearout contract noted that GSC "may require [Yearout]" to enter contracts with sub-sub-contractors, "assuming toward each other all obligations which the Contractor and Subcontractor assume toward each other." *Id.* (quoting Doc.

18-1). GSC fails to point out whether it actually did require Yearout to subcontract on those conditions, and it certainly does not begin to explain how that language would establish privity. Again, privity of contract in Georgia is defined narrowly, and nowhere does GSC argue it actually entered into a contract with Trane.[5] *See generally id*. It was not, therefore, in privity with Trane.

GSC further argues that it was an intended third-party beneficiary of the contract between Trane and Yearout. *Id.* at 6. GSC points to evidence that Trane had developed custom MAUs for the Project, knowing GSC was the general contractor. *Id.* at 7. Further, Yearout's contract with GSC specifically contemplated that Trane would supply the MAUs. *Id.* (citing Doc. 83-4, Exh. 73[6]). GSC claims that it is an intended beneficiary and is entitled to sue under O.C.G.A. § 9-2-20(b), which provides that "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." *Id.* at 8.

Generally, a supplier of materials or equipment is not considered a third-party beneficiary with standing to sue, and Georgia has not departed from this law. *See* Restatement (Second) of Contracts § 302, comment *e.* (1981) (noting that a building owner is merely an incidental beneficiary of his contractor's subcontract with a materials supplier); *Chem Tech Finishers, Inc. v. Paul Mueller Co.*, 189 Ga. App. 433, 375 S.E.2d

---

[5] GSC and Trane had considered forming a contract with one another, but the final purchase order ended up coming from Yearout. Doc. 94 at 108:9-109:21. At his deposition, a sales engineer for Trane testified that to the best of his recollection, Trane would not accept a purchase order from GSC on credit because of a "credit approval issue." *Id.* at 37:1-20. In any event, Trane and GSC chose to structure the Project in such a way that they would not have any contractual relationship with one another. And that choice clearly resolves the privity issue here.

[6] There is not an exhibit 73, or any exhibits, at that Docket cite. For purposes of this motion, the Court will assume without deciding that Exh. 73 supports the assertion for which it is cited.

881 (1988) (applying that principle to a commercial equipment supplier); *see also Kaiser Aluminum & Chem. Corp. v. Ingersoll-Rand Co.*, 519 F. Supp. 60, 73 (S.D. Ga. 1981) (reviewing cases and noting that "[t]he law of Georgia has not been anxious to find that parties not in privity can sue under the aegis of the third party beneficiary doctrine"). GSC, therefore, does not have standing to sue on the contract, as a third-party beneficiary or otherwise.

Even if it did have standing, however, the question here is the narrower one of whether GSC may sue to enforce the implied warranty of merchantability. The implied warranty of merchantability "clearly arises out of a contract of sale of goods, [so] it can only run to a buyer who is in privity of contract with the seller." *Lamb v. Georgia-Pac. Corp.*, 194 Ga. App. 848, 850, 392 S.E.2d 307, 309 (1990); *see Evershine Prod., Inc. v. Schmitt*, 130 Ga. App. 34, 35, 202 S.E.2d 228, 231 (1973). The limited exception for third-party beneficiaries is governed by O.C.G.A. § 11-2-318, which provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume, or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this Code section.

GSC is not a natural person. It does not, therefore, qualify as a third-party beneficiary of Trane's warranty to Yearout under § 11-2-318. Nor does GSC even address this issue in its response. *See generally* Doc. 97. Because it is neither a buyer in privity with Trane nor a third-party beneficiary of the warranty, GSC has no right to relief against Trane based on the claim asserted.

## III.  CONCLUSION

For the reasons discussed, Plaintiff Trane's motion for summary judgment on Defendant GSC's counterclaim for breach of warranty (Doc. 80) is **GRANTED**. Accordingly, GSC's counterclaim (Doc. 18 at 13-15) is **DISMISSED with prejudice**.

**SO ORDERED**, this 13th day of December, 2018.

S/ Marc T. Treadwell
MARC T. TREADWELL, JUDGE
UNITED STATES DISTRICT COURT
